**UNITED STATES BANKRUPTCY COURT**
<u>**SOUTHERN DISTRICT OF NEW YORK**</u>

FOR PUBLICATION

In re:

Case No. 12-12321 (MG)
Chapter 11

DEWEY & LEBOEUF LLP,

Debtor.

ENTEGRA POWER GROUP LLC,

Plaintiff,

Adv. Pro. No. 12-1889 (MG)

v.

DEWEY & LEBOEUF LLP,

Defendant.

<u>**MEMORANDUM OPINION AND ORDER DENYING ENTEGRA'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND DENYING DEWEY'S CROSS-MOTION FOR
JUDGMENT ON THE PLEADINGS**</u>

*A P P E A R A N C E S:*

TOGUT, SEGAL & SEGAL LLP
*Counsel to Alan M. Jacobs, Liquidation*
*Trustee, Dewey & LeBoeuf Liquidation Trust*
One Penn Plaza, Suite 3335
New York, New York 10119
By:     Scott E. Ratner, Esq.
        Frank A. Oswald, Esq.
        David A. Paul, Esq.
        Steven S. Flores, Esq.

SQUIRE SANDERS (US) LLP
*Counsel for Plaintiff Entegra Power Group LLC*
30 Rockefeller Plaza
New York, New York 10112
By:     Stephen D. Lerner, Esq.
        Robert A. Wolf, Esq.
        Brian M. McQuaid, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are cross-motions for judgment on the pleadings in the above-caption adversary proceeding (the "Adversary Proceeding").  On September 27, 2012, Entegra Power Group LLC ("Entegra") commenced this Adversary Proceeding against Dewey & LeBoeuf LLP ("Dewey"), its former law firm, to recover a $300,000 retainer ("Retainer") that it alleges it provided to Dewey in 2004 ("Complaint," ECF Doc. # 1).  Entegra alleges that the unused and unearned Retainer belongs to Entegra and is not property of Dewey's bankruptcy estate.  Dewey argues that because the Retainer fee was lawfully comingled in Dewey's general bank account, Entegra has failed to rebut the presumption that the funds are property of the estate.  According to Dewey, despite the firm never earning or applying the Retainer, Entegra merely holds a general unsecured claim against the estate in the amount of $300,000.

On December 21, 2012, Dewey filed an answer to Entegra's Complaint ("Answer," ECF Doc. # 13.).  On January 18, 2013, Entegra moved for judgment on the pleadings pursuant to Rule 7012(c) of the Federal Rules of Bankruptcy Procedure  ("Entegra's Motion," ECF Doc. # 15).  On February 14, 2013, Dewey filed a cross-motion for judgment on the pleadings (ECF Doc. # 17), a memorandum of law in support of its cross-motion and in opposition to the Entegra's Motion ("Dewey's Cross-Motion," ECF Doc. # 18), and the Declaration of David A. Paul ("Paul Decl.," ECF Doc. # 19).  JPMorgan Chase Bank, N.A., as Administrative and Collateral Agent, filed a brief statement in support of Dewey's Cross-Motion (ECF Doc. # 20).  On March 8, 2013, Entegra filed a combined opposition to the Dewey's Cross-Motion and a reply in support of Entegra's Motion ("Entegra's Response," ECF Doc. # 25).  On March 15, 2013, Dewey filed a reply in support of its cross-motion ("Dewey's Reply," ECF Doc. # 27).

2

On March 27, 2013, the Court ordered supplemental briefing to address Dewey's alleged affirmative defenses and for further detail regarding the termination of the attorney-client relationship ("Supplemental Briefing Order," ECF Doc. # 29).   Dewey filed a supplemental brief ("Dewey's Supplemental Brief," ECF Doc. # 30), supported by the Declaration of Janis M. Meyer ("Meyer Decl.," ECF Doc. # 31).   Entegra also filed a supplemental brief ("Entegra's Supplemental Brief," ECF Doc. # 34), supported by the Declaration of Jerry Coffey ("Coffey Decl.," ECF Doc. # 33).

The Court held a hearing on May 2, 2013, after which it took the matter under submission.   For the following reasons, the Court concludes that both Entegra's Motion and Dewey's Cross-Motion must be denied.

## I.    BACKGROUND

On or about April 2, 2004, Union Power Partners, L.P., Panda Gila River, L.P., Trans-Union Interstate Pipeline, L.P. and UPP Finance Company, LLC—alleged to be predecessors to Entegra (the "Entegra Predecessors")—entered into an engagement letter ("Engagement Letter") with Dewey Ballantine LLP ("Dewey Ballantine")—a predecessor by merger to Dewey—after which Dewey Ballantine began performing legal services for the Entegra Predecessors.   On January 26, 2005, the Entegra Predecessors each filed a voluntary petition for relief under Chapter 11 in the Bankruptcy Court for the District of Arizona and the cases were jointly administered.   While in bankruptcy, the Entegra Predecessors hired Dewey Ballantine as special corporate counsel.   The $300,000 Retainer provided pursuant to the Engagement Letter was never drawn upon for services performed by Dewey Ballantine.   On June 1, 2005, the Entegra Predecessors emerged from bankruptcy, pursuant to a confirmed chapter 11 plan of

reorganization, allegedly as Entegra Power Group, LLC.[1]  Post-reorganization, the Complaint

alleges that Dewey Ballantine continued to represent Entegra, even after the October 2007

merger of Dewey Ballantine and LeBoeuf, Lamb, Green & MacRae LLP.

　　　Neither party has produced a complete copy of the Engagement Letter.  Entegra has

produced a portion of the Engagement Letter, which does not include the salient terms of the

Retainer.  *See* Complaint Ex. A.  The Engagement Letter provides that "our representation will

be of Panda Gila River, L.P., Union Power Partners, L.P., Trans-Union Pipeline, L.P. and UPP

Finance Co., LLC (the 'Project Companies')," and ends with the following statement: "you shall

deposit the sum of $300,000 with Dewey Ballantine as a retainer for fees, which shall be

[remainder of Engagement Letter not provided]."  *Id.*  This portion of the Engagement Letter

does not indicate whether the Retainer was to be deposited into an escrow or a trust account.  It

appears undisputed, however, that the Retainer was deposited into Dewey's general operating

bank account in 2004 and comingled with Dewey's general funds.  The Engagement Letter also

included two paragraphs on the "Scope of Engagement"; neither paragraph expressly provides

for Dewey's ongoing retention by any successor entity for any work outside the scope of the

engagement for which the Project Companies retained Dewey.

　　　The parties dispute the exact date the attorney-client relationship with Entegra

terminated, although both parties concede that the termination date was prepetition.  Entegra

argues May 11, 2012 was the termination date because that is the day the partner with whom

Entegra had a relationship defected from Dewey for another firm.  Entegra's Mot. ¶ 3.  Dewey

argues that the relationship did not terminate until May 22, 2012, when Entegra paid Dewey the

---

[1]　　　Dewey's answer states that it lacks sufficient knowledge or information to form a belief as to the truth of Entegra's allegations insofar as they relate to the jointly administered bankruptcy of Entegra Predecessors and the emergence of Entegra as the reorganized entity.  Answer ¶¶ 10-16.

remainder of any unpaid fees. Dewey Supp. Brief ¶ 14. Neither party addresses when Dewey's engagement by the Project Companies ended.

On May 28, 2012, Dewey filed a petition for relief under Chapter 11 of the Bankruptcy Code ( "Petition Date"). As of the Petition Date, Entegra had paid all amounts due and owing to Dewey in full for fees and services Dewey rendered during the course of their relationship. Dewey concedes that the $300,000 Retainer was never applied to Dewey's invoices for services performed or costs incurred by the Project Companies or Entegra, and thus was never earned. *See* May 2, 2013 Hr'g. Tr. 17:8-18:20.

On July 19, 2012, when Entegra requested that the Retainer be returned, Entegra was advised by the Debtor's Chief Restructuring Officer that the Retainer was not segregated from Dewey's general operating account, that the funds would not be returned to Entegra, and that Entegra merely had a general unsecured claim against the estate. Entegra did not file a proof of claim in the bankruptcy case, despite the claim being listed as disputed, contingent and unliquidated in the Debtor's schedules.

On January 7, 2013, the Debtor filed the *Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP* ("Plan," ECF Doc. # 807). On February 27, 2013, the Court entered an order confirming the Plan ("Confirmation Order," ECF Doc. # 1144). On March 22, 2013, the Plan became effective ("Plan Effective Date"). On the Plan Effective Date, the Dewey & LeBoeuf Liquidation Trust ("Liquidation Trust") was established. Alan M. Jacobs was appointed as the Trustee of the Liquidation Trust ("Liquidation Trustee").

In its Complaint, Entegra seeks (i) a declaratory judgment that under applicable law the Retainer was not property of the Debtor's estate, as the estate holds no equity or ownership interest in the funds, and Dewey is obligated to return it; (ii) a ruling that the Debtor breached its

5

fiduciary duty to Entegra, remedied by the imposition of a constructive trust in the amount of $300,000; and (iii) a declaratory judgment that the Retainer is not property of the estate pursuant to section 541(d) and that an amount of Dewey's cash sufficient to repay the Retainer be impressed with a constructive trust.

Entegra argues that if the Retainer is a "security retainer" under New York law, then Dewey would lack both legal and equitable title to the Retainer, meaning it did not become property of the estate under 541(a). Entegra's Mot. at 6. If, on the other hand, the Retainer is an "advance payment retainer" under New York law, while Dewey may have legal title to the Retainer, Entegra believes it retained an equitable interest in any unearned portion of the Retainer (here the full amount of the Retainer) because Dewey held the Retainer as Entegra's fiduciary until it could be applied to fees. As the Retainer remained unearned and unapplied, Entegra argues the Retainer was not property of the estate pursuant to section 541(d), which Entegra believes excludes from property of the estate all property where a debtor holds legal but not equitable title. Last, Entegra argues Dewey breached its fiduciary duty to Entegra by not promptly returning the Retainer upon the conclusion of the representation, especially after Entegra made the demand on July 19, 2012.

In opposition, Dewey argues that the Retainer was an advance payment retainer and is property of the estate because (i) the Retainer was not required to be segregated from its general operating account and cash in a Debtor's operating account is presumed to be property of the estate; (ii) the Debtor has maintained unrestricted possession, custody, and control over the Retainer since it was received in 2004; and (iii) the Retainer was a prepayment of professional fees that rightfully belongs to the Debtor, making Entegra a general unsecured creditor. Thus, the Debtor does not believe it should be required to return the Retainer, the Court should not

impose a constructive trust, and Entegra would only be allowed a general unsecured claim in the

amount of the Retainer (had Entegra filed a proof of claim). The Debtor also argues that

returning the Retainer to Entegra would improperly place Entegra ahead of the Debtor's other

unsecured creditors whose recoveries will be diminished if the funds are returned to Entegra in

full.

## II.   DISCUSSION

### A.   Standard for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure, made applicable to this adversary

proceeding by Bankruptcy Rule 7012, states: "[a]fter the pleadings are closed—but early enough

not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).

"Judgment on the pleadings is appropriate where material facts are undisputed and where a

judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers

v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). In deciding a Rule 12(c) motion

for judgment on the pleadings, courts apply the same standard applicable to a motion under Rule

12(b)(6). *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010); *Lewis v. GMAC Mortgage

Co., LLC (In re Residential Capital, LLC),* Adv. Pro. No. 12-01731 (MG), 2012 WL 5386151, at

*3 (Bankr. S.D.N.Y. Nov. 1, 2012); *see also* FED. R. CIV. P. 12(h)(2) ("Failure to state a claim

upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)").

To survive a motion to dismiss, Entegra must "plausibly suggest an entitlement to relief."

*Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). When considering a motion to dismiss under either

Rule 12(b)(6) or Rule 12(c), the Court must accept the facts alleged in the Complaint as true and

draw all reasonable inferences in favor of the non-moving party. *Koppel v. 4987 Corp.*, 167 F.3d

125, 133 (2d Cir. 1999).  However, the court is not bound to accept legal conclusions couched as

factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B.    Entegra Has Not Yet Established its Legal Entitlement to the Retainer

For the Court to rule in favor of either Entegra's Motion or Dewey's Cross-Motion there

must be no disputed issues of material fact.  However, on the face of the pleadings, Dewey never

admitted a threshold fact, requiring that Entegra's Motion be denied.  As the record stands, it is

currently disputed whether Entegra succeeded to the rights of the Entegra Predecessors with

respect to their interest in the Retainer paid to Dewey Ballantine.  It is also disputed whether

Dewey's original engagement by the Project Companies included a security retainer or an

advance payment retainer.

In paragraph 16 of Entegra's Complaint, Entegra states that "[o]n or about June 1, 2005,

the Entegra Predecessors emerged from bankruptcy pursuant to a confirmed chapter 11 plan of

reorganization as Entegra Power Group, LLC."  Complaint ¶ 16.  In its answer, Dewey stated the

"Debtor lacks sufficient knowledge or information to form a belief as to the truth of the

allegations contained in Paragraph 16 of the Complaint."  Answer ¶ 16.  Nothing in the record

establishes that Entegra is the successor-in-interest to the Entegra Predecessors' rights to the

Retainer.  Thus, even if the Court were to find that the Retainer paid by Entegra's Predecessors

to Dewey Ballantine was not property of Dewey's estate, the Court could not grant Entegra's

Motion, as Entegra has not established it has an interest in the Retainer.

As this case is likely to continue to be prosecuted, the Court will address the legal issues

raised by the parties that may well shape the future course of this case.

### C.    Security vs. Advance Payment Retainer

New York law recognizes three types of retainers.  First is the "classic retainer fee arrangement" where money is paid by the client to the lawyer to secure the lawyer's availability over a prescribed period of time.  *See Ruberto v. DeFilippo*, 913 N.Y.S.2d 889, 891 (N.Y. Civ. Ct. 2010).  In this situation, the attorney is entitled to the Retainer regardless whether any services are performed for the client.  Neither party here argues that the Retainer is a classic retainer.

Second is the "security retainer," where the lawyer "holds the money solely to secure the ability of the client to pay for the services the client expects the lawyer to render in the future." *See id.*  "The money remains the property of the client until the attorney applies it to charges incurred for services actually rendered," and "all 'unearned' fees are required to be returned to the client." *Id.*  "In some jurisdictions, payments pursuant to a 'security retainer' must be placed in an escrow or trust account to be drawn upon only as the fee is earned." *Id.*  A retainer is only a security retainer where it is specifically created in the retainer agreement.

Third is the "advance payment retainer," where the client pays the attorney in advance for all or some of the legal services which the attorney is expected to provide the client.  Here, "ownership of the funds is intended to pass to the attorney at the time of payment in exchange for the promise by the attorney to provide the legal services." *Id.*  "Absent a 'security retainer' being specifically created in the Retainer agreement, New York treats all such legal fee payments as an 'advance payment retainer.'" *Id.*  Absent an agreement creating a security retainer, "advance payments may be treated as fees belonging to the attorney upon transfer." *In re King*, 392 B.R. 62, 71 (Bankr. S.D.N.Y. 2008).

The parties dispute whether the Retainer is a security retainer or an advance payment retainer. Neither party has produced a full version of the Engagement Letter. Entegra argues that the Retainer is a security retainer, even though the full Engagement Letter cannot be found. The portion of the Engagement Letter provided does not indicate that the Retainer is a security retainer. Entegra bases its argument on the following: (i) the Engagement Letter was entered shortly before Entegra's predecessors filed for bankruptcy and "security retainers are common in and before bankruptcy cases, where the threat of insufficient client funds is heightened," Entegra's Response at 3; and (ii) despite incurring legal fees in an amount almost triple that of the Retainer, Dewey had not drawn down any portion of the Retainer, which Entegra believes is inconsistent with an advance payment retainer. Conversely, Dewey contends that, because neither party can produce a full copy of the Engagement Letter, there is no evidence that the Retainer is a security retainer, and New York law treats it as an advance payment retainer.

Federal Rules of Evidence Rule 1002 states "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." FED. R. EVID. 1002. Evidence Rule 1004(a) does not require an original, and other evidence of the content of a writing is admissible if "all the originals are lost or destroyed, and not by the proponent acting in bad faith." FED. R. EVID. 1004(a). Under Rule 1.15(d)(1)(iii) of the New York Rules of Professional Conduct, a lawyer is required to maintain copies of all retainer and compensation agreements with clients for seven years after the events that they record. *See* N.Y. R. PROF'L CONDUCT 1.15(d)(1)(iii).[2] It is unclear whether this rule required

---

[2]    While Rule 1.15(d)(iii) became effective on April 1, 2009, the prior rule, DR 9-102(d)(3), likewise required that copies of retainer agreements be maintained for seven years. N.Y. CODE OF PROF'L RESPONSIBILITY, 22 NYCRR § 1200.46(d)(3). Copies of all bills rendered to clients must also be retained for seven years under the current and former rules. N.Y. R. PROF'L CONDUCT 1.15(d)(1)(v) (current rule); N.Y. CODE OF PROF'L RESPONSIBILITY, 22 NYCRR § 1200.46(d)(5) (former rule). The record on the cross-motions does not show whether or how the retainer was reflected in prior bills.

Dewey to maintain a copy of the Engagement Letter for seven years after the date of the

engagement (April 2, 2004), or for seven years after the engagement was completed (no earlier

than June 1, 2005, when the Entegra Predecessors emerged from bankruptcy).  If the work that

Dewey continued to perform for Entegra was covered by the Engagement Letter, Dewey was

obligated to maintain a copy of the Engagement Letter.

If Dewey is unable to produce a copy of an engagement letter it was legally obligated to

retain, the Court may be required to decide whether any preclusion or adverse inference applies

in further proceedings in this case.  At this juncture, however, the Court is unable to determine

whether the Retainer is a security retainer or an advanced payment retainer until more facts are

known.[3]  Thus, the Court must deny both Entegra's Motion and Dewey's Cross-Motion as the

type of retainer is a material fact in dispute.

**D.        Whether the Retainer Is Property of the Debtor's Estate**

Section 541(a)(1) of the Code provides that property of the estate is comprised of  "all

legal or equitable interests of the debtor in property as of the commencement of the case." 11

U.S.C. § 541(a)(1).  State law determines whether a debtor has an interest in property.  *See*

*Buchwald v. Renco Group, Inc. (In re Magnesium Corp. of Am.)*, 399 B.R. 722, 758 (Bankr.

S.D.N.Y. 2009).

*1.  The Security Retainer*

Under New York law, if the Retainer is a security retainer, then the Retainer would not be

property of Dewey's estate because Dewey would hold neither legal nor equitable title under

section 541(a), as the funds would have remained property of the Entegra Predecessors until

---

[3]        As explained further below, if the Engagement Letter did not cover the work Dewey did for Entegra, but only the work it did for the Project Companies, and if Entegra is able to establish that it succeeded to the rights of the Project Companies, it may well be that Dewey breached a fiduciary duty when it failed to return the unearned portion of the Retainer to the Project Companies, or their successor, when the Project Companies' engagement ended.

applied by Dewey. *See Ruberto*, 913 N.Y.S.2d at 891.[4]  If the parties intended for the Retainer to

be a security retainer and Dewey placed the funds in escrow, then there would be little dispute as

to whether the funds should be returned to the Entegra Predecessors' successor entity.  However,

because the funds were comingled with funds in Dewey's general operating account, even if the

retainer is a security retainer, the Court must impose a constructive trust for the funds to be

returned.

> 2. *The Advance Payment Retainer*

The issues are more difficult if the Retainer is an advanced payment retainer.  For

guidance on advance payment retainers, both parties direct the Court to State Bar Ethics Opinion

816.  *See* New York State Bar Association Op. No. 816 (Oct. 26, 2007) ("Ethics Opinion 816").

Ethics Opinion 816 states:

> Although the advance payment retainer is not client property, the
> client retains an interest in that portion of the Retainer that is not
> yet earned by the lawyer.  Furthermore, at the conclusion of the
> representation the lawyer must promptly return any portion of the
> advance payment retainer that is not earned.  It would not be
> appropriate for a lawyer to negotiate a nonrefundable advance
> payment retainer with the client.

*Id.* ¶ 8.  Ethics Opinion 816 concludes by stating, "A lawyer may ethically accept an advance

payment retainer and need not place such funds in a client trust account.  If the advance payment

retainer is placed in the lawyer's account, the lawyer may retain any interest earned from such

amount."  *Id.* ¶ 11.

Assuming, *arguendo*, that the Retainer was an advance fee retainer, it is undisputed that

Dewey lawfully comingled the Retainer with funds in its general account, as it would have been

ethically permitted to do.  *See id.*  Dewey argues that there is a general presumption that funds in

---

[4]    For present purposes, the Court assumes that Entegra is the successor-in-interest to the Entegra
Predecessors' rights to the Retainer, which, as noted above, is currently a disputed fact.

a debtor's general account are property of the estate.  *In re MF Global Holdings, Ltd.*, No. 11 Civ. 15059 (MG), 2011 WL 6210374, at *1 (Bankr. S.D.N.Y. Dec. 14, 2011); *see also McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC),* 439 B.R. 47, 70–71 (Bankr. S.D.N.Y. 2010).

To rebut the presumption that the funds were property of the estate, Entegra asserts that Dewey held only legal title to the Retainer and did not maintain an equitable interest in any unearned and unapplied portion of the Retainer.  Entegra argues that, because Dewey had no equitable interest in the Retainer, the Retainer is not property of the estate because 541(d) excepts from property of the estate all property in which the debtor holds only legal title and not an equitable interest as of the filing of the petition.

Section 541(d), in its entirety, states:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

The Court finds unpersuasive Entegra's argument that section 541(d) applies to the Retainer because an advance payment retainer could lawfully be comingled with the funds in Dewey's general operating account.  Once in that account, Dewey could use the funds in the account for any lawful purpose.  This case does not involve any misappropriation of Entegra's funds.  In these circumstances, section 541(d) does not apply.

E.        The Standards for Imposing a Constructive Trust

In the event that Entegra establishes that the Retainer was a security retainer, it may seek

the remedy of a constructive trust.  In determining whether to impose a constructive trust on

property within the debtor's possession, the Court must look to state law.  *See In re Howard's*

*Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989); *see also In re First Cent. Fin. Corp.*, 377 F.3d

209, 212 (2d Cir. 2004).  Generally, New York law requires four elements for a constructive

trust: (i) a confidential or fiduciary relationship; (ii) a promise, express or implied; (iii) a transfer

of the subject *res* made in reliance on that promise; and (iv) unjust enrichment (the most

important of the four elements).  *Id.*  Nonetheless, "[a]lthough these factors provide important

guideposts, the constructive trust doctrine is equitable in nature and should not be 'rigidly

limited.'"  *Koreag, Controle et Revision S.A. v. Refco F/X Assocs. (In re Koreag, Controle et*

*Revision S.A.),* 961 F.2d 341, 348 (2d Cir. 1992) (finding that a lack of a confidential or fiduciary

relationship does not bar the imposition of a constructive trust).  "New York courts have

consistently stressed the need to apply the doctrine with sufficient flexibility to prevent unjust

enrichment in a wide range of circumstances," and "the absence of any one factor will not itself

defeat the imposition of a constructive trust when otherwise required by equity."  *Id*. at 353.

"When property has been acquired in such circumstances that the holder of the legal title may not

in good conscience retain the beneficial interest, equity converts him into a trustee."  *Id.* (quoting

*Brand v. Brand*, 811 F.2d 74, 77 (2d Cir. 1987)).

If the Court finds that the imposition of a constructive trust is warranted, then section

541(d) would apply and any property held in the constructive trust would not be property of the

estate.  *See In re Flanagan*, 503 F.3d 171, 180 (2d Cir. 2007) ("The effect of a constructive trust

in bankruptcy is profound.  While the bankrupt estate is defined very broadly under § 541(a)(1)

14

of the Bankruptcy Code to include all legal or equitable interests of the debtor, any property that

the debtor holds in constructive trust for another is excluded from the estate pursuant to § 541(d)

. . . .").  This result follows because Dewey would hold no equitable interest in the specific funds

held in constructive trust for the benefit of Entegra.  As explained below, constructive trusts are

disfavored in bankruptcy because they alter the distribution rules provided under the Bankruptcy

Code.  Additionally, imposition of a constructive trust ordinarily requires tracing, something

Entegra has failed to do at this stage of the proceeding.

> 1.  *A Confidential or Fiduciary Relationship, an Express or Implied Promise, and Reliance on the Promise*

The New York Rules of Professional Conduct impose a fiduciary duty on a lawyer

possessing any funds *belonging to another person* incident to his or her practice of law.  N.Y. R.

PROF'L CONDUCT 1.15(a) (" A lawyer in possession of any funds or other property belonging to

another person, where such possession is incident to his or her practice of law, is a fiduciary, and

must not misappropriate such funds or property or commingle such funds or property with his or

her own."). The lawyer may not comingle client funds, and the lawyer breaches a fiduciary duty

to the client if the lawyer does so.  *Id.*  The rule clearly applies to a security retainer, but not to an

advance payment retainer since in the latter case the funds no longer belonged to the client.

Rule 1.16(e) requires that "upon termination of representation, a lawyer shall take steps,

to the extent reasonably practicable, to avoid foreseeable prejudice to the rights of the client,

including . . . promptly refunding any part of a fee paid in advance that has not been earned."

N.Y. R. PROF'L CONDUCT 1.16(e).[5]  This rule applies whether or not the retainer is a security or

---

[5]    Additionally, Rule 1.15(c)(4) provides that a lawyer shall "promptly pay or deliver to the client or third person as requested by the client or third person the funds . . . in the possession of the lawyer that the client or third person is entitled to receive."  N.Y. R. PROF'L CONDUCT 1.15(c)(4).  Former rule, DR 9-102(c)(4), imposed the identical requirement.  N.Y. CODE OF PROF'L RESPONSIBILITY, 22 NYCRR § 1200.46(c)(4).

advance payment retainer. A lawyer breaches a fiduciary duty to the client when the lawyer fails to repay the unearned retainer when the engagement ends.

In the case of a security retainer, there is an express or implied promise to repay the unearned portion of the retainer from a specific fund. If the Retainer here was a security retainer, Dewey breached its fiduciary duty when it comingled the funds. A constructive trust is a possible remedy in such circumstances if Entegra can meet the high standards for imposing a constructive trust, including the tracing requirement.

In the case of an advance payment retainer, there is no promise, express or implied, that the retainer funds will be held separate and apart from the law firm's general funds, and while the client may fully expect to receive repayment of any unearned retainer, there is no basis to expect or rely on repayment from any particular source. A lawyer breaches a fiduciary duty to the client when the lawyer fails to repay the unearned retainer when the engagement ends. If the Retainer was an advance payment retainer, Dewey did not breach its fiduciary duty when it comingled and used the funds from its general operating account, but it did breach its fiduciary duty when it failed to return the unearned retainer when the engagement ended.

While Dewey's failure to return the unearned Retainer breached Dewey's fiduciary duty to its client, not every breach of fiduciary duty supports the imposition of a constructive trust. Many claims—perhaps even most claims—for breach of fiduciary duty leave the claimant with a general unsecured claim against the estate. A breach of fiduciary cause of action is not automatically entitled to a higher priority than other claims against the estate. There would be no basis to impose a constructive trust if Dewey lawfully comingled the funds because there are no specific funds which in equity belong to Entegra.

16

Although not directly on point, the Court finds *Ruberto* instructive.  In *Ruberto*, a client sued his former lawyer for failing to return an unearned and unused advance payment retainer. *Ruberto*, 913 N.Y.S.2d at 889-90.  The lawyer, who had previously filed a personal bankruptcy case and received a discharge, argued that he could return to the bankruptcy court, amend the petition, and discharge the debt to avoid returning the unused unearned retainer.  The court rejected the lawyer's argument because the court did not believe the lawyer's fiduciary obligation to return money to the client was dischargeable in bankruptcy.  The court explained that even though, under New York law, "ownership of the [advance payment retainer] fee does not remain with the client, [it] does not mean that the defendant can have his legal and ethical obligation to return the unearned fee discharged in bankruptcy."  *Id.* at 891.  The court relied on Ethics Opinion 816, and noted that although a lawyer is not required to place an advance payment retainer in a separate trust account, the lawyer must promptly return any unused portion to the client.  *Id.* at 892.  The court further noted that a lawyer holds a retainer fee in a fiduciary capacity, and, citing Second Circuit authority, explained that an attorney breaches his or her fiduciary duty where no attempt is made to match fees to the value of services rendered.  *Id.* (citing *In re Hayes*, 183 F.3d 162, 172 (2d Cir. 1999)).  *Ruberto* clearly stands for the proposition that a lawyer breaches his fiduciary duty to his client when the lawyer fails to return the unearned advance payment retainer when the engagement ends.  The state court decision is of little or no precedential weight on the bankruptcy law issue whether the debt to the client is dischargeable, or for that matter whether a constructive trust should be imposed in a bankruptcy case to give one creditor (the former client) a priority over other creditors (such as the general unsecured creditors in the Dewey bankruptcy case).

Whether Entegra may seek to impose a constructive trust here depends in the first instance upon whether the Retainer was a security retainer or an advance payment retainer, an issue that cannot be resolved on the cross-motions for judgment on the pleadings.

### 2. *Unjust Enrichment*

While the Court is not making a determination at this stage whether a constructive trust is appropriate if the Retainer was a security retainer, it is difficult to see how Dewey is unjustly enriched under the circumstances. Dewey's liquidation plan has been confirmed and become effective. All estate property is being distributed to Dewey's creditors according to the waterfall in the confirmed plan. Imposing a constructive trust in favor of Entegra would reduce recoveries by Dewey's unsecured creditors; it would not unjustly enrich Dewey.

### F.    Dewey's Arguments Do Not Support Granting It Judgment on the Pleadings

Dewey has failed to demonstrate that it is entitled to judgment on the pleadings. Important factual disputes remain to be resolved, some of which could result in judgment in favor of Entegra. The parties do not dispute that the attorney-client relationship had terminated prepetition and, as of the Petition Date, Dewey had not applied or earned any part of the Retainer to fees the Project Companies or Entegra incurred. Furthermore, the New York Rules of Professional Conduct, which set high ethical standards for attorneys, require the funds to be *promptly* returned upon the conclusion of the relationship.

Dewey argues that Entegra should be treated as a general unsecured creditor because (i) imposing a constructive trust would "wreak havoc" on the Bankruptcy Code's priority scheme to the detriment of unsecured creditors; (ii) Dewey was given insufficient time to return the funds between termination of the relationship and the Petition Date, at which point the Retainer became property of the estate; (iii) Dewey and Entegra had entered into a written contract, which

18

destroys the presence of the unjust enrichment element of a constructive trust; and (iv) Dewey

was permitted to comingle the funds in its general operating account, and therefore Entegra

cannot trace the Retainer funds.  The Court will address each of these arguments in turn.

First, Dewey argues that constructive trusts are generally disfavored in the bankruptcy

context as a result of the Code's priority scheme.  *See First Cent.*, 377 F.3d at 217-18 ("New

York constructive trust law does not diminish the need to 'act very cautiously' to minimize

conflict with the goals of the Bankruptcy Code . . . .  [B]ankruptcy courts are generally reluctant

to impose constructive trusts without a substantial reason to do so . . . .  Bankruptcy courts in this

Circuit are no exception.") (internal quotation marks and citations omitted); *In re Commodore

Bus. Machs., Inc.,* 180 B.R. 72, 83 (Bankr. S.D.N.Y. 1995) ("[C]onstructive trusts are anathema

to the equities of bankruptcy since they take from the estate, and thus directly from competing

creditors, and not from the offending debtor.") (internal quotation marks and citation omitted).

Second, Dewey argues there was insufficient time to promptly return the Retainer

between the termination of the relationship and the filing of its bankruptcy petition, and, thus, it

did not violate New York Rule of Professional Conduct 1.16(e), requiring an attorney to

promptly return the Retainer upon termination of the attorney client relationship.  In its

supplemental brief, Dewey cites *Geltzer v. Balgobin (In re NFN Balgobin),* 490 B.R. 13 (Bankr.

E.D.N.Y. 2013), for the proposition that imposing a constructive trust against the bankruptcy

estate requires some prepetition unjust conduct by the debtor related to the subject property.

Debtor's Supp. Brief ¶ 15.  The *Balgobin* court quoted the Second Circuit's opinion in *First

Central* where the court stated that "[w]hile a showing of actual fraud or wrongful conduct is not

strictly required for a constructive trust, New York law is clear that a constructive trust is an

equitable remedy intended to be 'fraud-rectifying' rather than 'intent-enforcing.'" *Balgobin*, 490 B.R. at 22 (quoting *First Cent.*, 377 F.3d at 216).

It is unclear in this case when Dewey's engagement by the Entegra Predecessors ended, or whether the ongoing work for Entegra was part of the same engagement covered by the same Engagement Letter supported by the same Retainer. While the parties dispute the termination date of Dewey's engagement by Entegra—another material fact in contention—the parties agree that the relationship terminated prepetition. Entegra argues that the relationship terminated on May 11, 2012 when the relationship partner left the firm; Dewey argues that the relationship terminated on May 22, 2012 when Entegra paid Dewey the last of its owed fees. The bankruptcy petition was filed on May 28, 2012. Dewey had an obligation under Rule 1.16(e) to promptly return the unearned Retainer upon termination of the relationship. Dewey also could have applied the retainer against any unpaid fees that were due and repaid the balance. Nothing in Rule 1.16 required Entegra to demand a return of the funds; even absent a demand, Dewey was obligated to promptly return the funds upon termination of the relationship. Dewey could not avoid its fiduciary duty merely because it filed for bankruptcy. Even assuming the relationship terminated on May 22, 2012, Dewey had almost a full week to return the funds prior to filing its voluntary petition. The firm had at least six days to return the funds (using Dewey's proposed termination date), during which time Dewey was in the process of preparing its petition.

Third, Dewey argues that the presence of a written agreement (i.e., the Engagement Letter) precludes the imposition of a constructive trust. Dewey cites *First Century* and *Brenner v. Heller (In re Lincoln Logs Ltd.)*, No. 1:11-CV-481(NAM), 2011 WL 6011786, at *3 (N.D.N.Y. Nov. 30, 2011), for the proposition that a constructive trust is not available where the parties' relationship is governed by a written contract. This limitation is based on the idea that

"where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists." *First Cent.*, 377 F.3d at 215-16 ("FCIC, on the other hand, has a contractual claim directly against FCFC-arising out of the Agreement-which can be pursued in the bankruptcy proceeding.  We concede that FCIC, like many other creditors, will not, in all probability, be made whole in the proceedings; but that does not mean its remedy is legally inadequate, simply that it is imperfect."); *Lincoln Logs*, 2011 WL 6011786, at *3.  Here, however, whatever requirements the Engagement Letter may have imposed, New York's rules of professional responsibility imposed a fiduciary duty on Dewey promptly to return the unearned portion of the Retainer.  This obligation does not arise from the contract and cannot be avoided by contract.

Furthermore, neither side has produced a complete copy of the Engagement Letter with all of the material terms.  Unlike in *First Century*, the Court has not yet been presented with the agreement controlling the rights and obligations of the parties.  But even if the full agreement was provided, the facts of this case differ significantly from *First Century* and *Lincoln Logs* as neither of those cases implicated the ethical obligations of an attorney.

Fourth, Dewey argues that a constructive trust is not available because Entegra is unable to trace the funds, since Dewey lawfully comingled the funds into its general operating account.  Whether Dewey lawfully comingled the funds remains in dispute.  In any event, before imposing a constructive trust, "the claimant must 'establish proof of a *res* to which the constructive trust could attach and . . . [must] trace the property.'" *Cabrini Med. Ctr.  v. Mannucci*, No. 09-Civ-14398 (AJG), Adv. No. 11-02407, 2012 WL 527711 (Bankr. S.D.N.Y. Feb. 16, 2012), *aff'd*, 12-Civ-3211 (LAK) (S.D.N.Y. Oct. 09, 2012.) (quoting *LFD Operating, Inc. v. Ames Dep't Stores, Inc. (In re Ames Dep't Stores, Inc.)*, 274 B.R. 600, 625 n. 16 (Bankr. S.D.N.Y 2002)).  "It is

21

hornbook law that before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985).

In response, Entegra argues it "is not required to 'trace' its particular funds in Dewey's operating account." Entegra's Response at 13. Entegra cites *Matter of Siegel*, Case No. 332730/H, 2010 N.Y. Misc. Lexis 5318, at * 12-13 (N.Y. Surr. Ct. Sept. 30, 2010), *aff'd,* 935 N.Y.S.2d 115 (N.Y. App. Div. 2011) and *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 224 F. Supp. 2d 567, 611 (S.D.N.Y. 2002), for the proposition that "courts soften tracing requirements when the defendant used the property in question in breach of a fiduciary duty." *Id.* However, neither *Siegel* nor *Martha Graham* were decided in the bankruptcy context where the imposition of a constructive trust would have necessarily reduced the recovery of general unsecured creditors.

The Court has its doubts whether Entegra could trace its funds in Dewey's general operating account, but the issue cannot be resolved as a matter of law at this stage of the proceeding. Entegra has failed to demonstrate that it should be relieved of the obligation to trace funds before imposing a constructive trust; and Dewey has failed to demonstrate that tracing is impossible. Tracing is a fact intensive inquiry that cannot be resolved on the motions for judgment on the pleadings.

If Dewey received an advance payment retainer, it was lawfully permitted to comingle the funds and use them as its own. The right to comingle funds would be meaningless if the Court could impose a constructive trust on funds properly deposited in a general account. Imposing a constructive trust on funds properly in a general account would also override the Bankruptcy Code's priority scheme.

22

### III.    CONCLUSION

Because Entegra did not file a proof of claim, it will be unable to receive a distribution from estate assets under the confirmed liquidation plan.  If the Retainer was a security retainer, and Entegra can satisfy tracing and other constructive trust requirements, Entegra may succeed in recovering some or all of the unearned Retainer since assets in a constructive trust are not property of the estate.  If the Retainer was an advance payment retainer, the Court concludes that no constructive trust may be imposed and Entegra may not recover from the estate.  Further proceedings in this case are required before these issues can be resolved.

But this may not provide the final word on a possible recovery by Entegra in this adversary proceeding.  Dewey maintained several fiduciary insurance policies.  Under section 1141(d)(3)(A) of the Bankruptcy Code, Dewey's obligation to Entegra is not discharged.  *See also Second Amended Chapter 11 Plan of Liquidation of Dewey & LeBoeuf LLP,* dated January 7, 2013, Section 17.3, at 56 ("No Discharge.  The Debtor will not receive a discharge under the Plan in accordance with section 1141 of the Bankruptcy Code.") (ECF Doc. # 1144, Ex. A).  In light of Dewey's breach of fiduciary duty by failing to return the unearned Retainer, it may well be that Entegra may obtain a recovery from Dewey's fiduciary insurance policies.  That is not an issue presently before the Court and the parties did not address the matter in their briefs.

As set forth above, because there are disputed issues of material fact, Entegra's Motion

and Dewey's Cross-Motion are **DENIED**.  A separate order will be entered requiring the parties

to appear at a case management and scheduling conference.

**IT IS SO ORDERED.**

Dated:     July 2, 2013
            New York, New York


                              *Martin Glenn*
                              MARTIN GLENN
                         United States Bankruptcy Judge